UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

    Plaintiff,

v.                                               Criminal Case No. 08-20011

Sparkle Eldridge (D-5),            Honorable Sean F. Cox

    Defendant.
_____/

## **OPINION & ORDER**

On February 2, 2008, counsel for Defendant Sparkle Eldridge ("Defendant" or "Eldridge") filed a motion seeking a competency hearing and judicial determination of Eldridge's mental competency to stand trial in this action. The Court granted the request for a competency hearing on February 4, 2008, and ordered a psychiatric or psychological examination of Eldridge. On April 15, 2008, Defendant Eldridge filed a Motion to Suppress. On July 18, 2008, the Court conducted a competency hearing. For the reasons below, the Court concludes that Eldridge: 1) is competent to stand trial in this action; and 2) was competent to waive her *Miranda* rights on December 11, 2007.

BACKGROUND

Eldridge was indicted in this action on January 9, 2008, and is charged with conspiracy to commit bank robbery. Her appointed counsel, Samuel Churikian, has been representing her in this matter since January 16, 2008.

On February 1, 2008, Mr. Churikian filed a motion for competency exam, pursuant to the Insanity Defense Reform Act of 1984 (Chapter IV of the Comprehensive Crime Control Act of

1

1984, 18 U.S.C. § 4241-4247). (Docket Entry No. 37). In that motion, counsel states that he has reason to believe that Eldridge may not be competent to stand trial. He states that Eldridge has been on SSI for mental health issues, is under a doctor's care, and is taking medication. He further states that she was admitted to Henry Ford Hospital on December 19, 2007, because she was hearing voices and walking in traffic, in the hope that she would be struck and killed.

The Court granted the request for a competency hearing, and ordered the requested competency exam, in an order dated February 4, 2008.

On April 15, 2008, Eldridge's counsel filed a Motion to Suppress Statement (Docket Entry No. 62). That motion asserts that Eldridge seeks to suppress a statement that she made to Investigator Todd on December 11, 2007, after she was formally arrested and in custody, on the basis that she was suffering from mental illness at the time such that she could not understand and knowingly waive her *Miranda* rights. Although the Court originally scheduled the Motion to Suppress hearing on May 16, 2008, upon agreement of the parties, the motion was adjourned due to the related competency hearing, which was scheduled to take place on July 18, 2008.

Prior to the July 18, 2008 hearing, the Court advised counsel of its intention to address, at the July 2008 hearing, the issue of whether Eldridge was competent to waive her *Miranda* rights. Accordingly, both expert reports submitted to the Court by counsel also dealt with that issue and the evidence presented at the hearing dealt with the issue.

A.  Dr. Nixon's Written Report:

Defense counsel chose to have Eldridge examined by William R. Nixon, Jr., Ph.D. ("Dr. Nixon"). Dr. Nixon examined Eldridge on March 6, 2008, and April 1, 2008, and prepared a written report. (Dr. Nixon's report was admitted as Exhibit 2). Nixon's report was submitted to

the Court on May 14, 2008. In his report, Dr. Nixon reached the following overall conclusions: 1) that due to her mental disease, Eldridge "does not currently possess a rational as well as factual understanding of the charges made against her" and is therefore incompetent to stand trial; 2) that due to her mental disease, Eldridge "does not currently possess functional-enough manner to prepare or carry-out her defense before or during trial" and is therefore incompetent to stand trial; and 3) "from a clinical perspective, it is very unlikely that at the time of her interview by the police on 12-11-07 [Eldridge] would have possessed the requisite psychological integrity and cognitive comprehension to knowingly, voluntarily, and intelligently waiver her Miranda Rights, and to make that deliberate choice with full rational awareness of both the nature of the rights being abandoned and the consequences of the decision to abandon them." (Nixon Report at 9-10).

B.  Dr. Clark's Written Report:

The Government chose to have Eldridge examined by Charles R. Clark, Ph.D. ("Dr. Clark"). Dr. Clark examined Eldridge on June 9, 2008, and prepared a written report. (Dr. Clark's Report was admitted as Exhibit 4). In his report, Dr. Clark reached very different conclusions than those reached by Dr. Nixon. Dr. Clark's report reflects that his overall opinion is that Eldridge is feigning mental illness. (Clark Report at 16-20). He states that, in his professional opinion, "there is no good reason to regard Ms. Eldridge as incompetent to stand trial. There is no reliable basis for concluding that she suffers from a mental disease or defect that renders her unable to understand the nature and consequences of the proceedings against her or to assist properly in her defense." (Clark Report at 18). His report also indicates that he concludes that she was competent to waive her *Miranda* rights when she was questioned by the

police:

> There is no basis in the record of the waiver or statements Ms. Eldridge made on December 11, 2007, nothing in her history of psychiatric treatment, and nothing in the results of the present evaluation to indicate that she was not capable of making a knowing and intelligent waiver of her rights. There is no reason to conclude, in my opinion, that Ms. Eldridge did not have the ability to understand, and did not actually understand, that she did not have to speak, that she had the right to the presence of counsel, and that the government could use what she said against her.

(Clark Report at 30).

C.  <u>The July 18, 2008 Hearing</u>:

This Court held a competency hearing on July 18, 2008, which was attended by Eldridge, her counsel, Mr. Churikian, and counsel for the Government.

The following exhibits were introduced into evidence at the July 18, 2008 hearing: 1) a compact disk containing several tape-recorded telephone conversations between Eldridge and Defendant Andre Jones, who is currently in custody (Exhibit 1); 2) Dr. Nixon's written report (Exhibit 2); 3) Dr. Nixon's curriculum vitae (Exhibit 3); 4) Dr. Clark's written report; 5) Dr. Clark's curriculum vitae (Exhibit 5); and 6) a written summary of telephone calls between Eldridge and Defendant Andre Jones, prepared by the Government (Exhibit 6).

Pursuant to 18 U.S.C. § 4247(d), Eldridge was given the opportunity to testify, to present evidence, to subpoena witnesses on her behalf, and to confront and cross-examine witnesses who appeared at the hearing.

Eldridge, through her counsel, called Dr. Nixon as a witness. Dr. Nixon testified that the night prior to the competency hearing, Mr. Churikian had provided him with a compact disk (Ex. No. 1) containing several telephone calls of Eldridge speaking with Defendant Andre Jones, the father of her two children who is currently in custody. Significantly, Dr. Nixon testified that

4

after hearing those telephone calls, he no longer believes that Eldridge is incompetent to stand trial or waive her *Miranda* rights. That is, Dr. Nixon testified that the conclusions contained in his written report are no longer valid and that, in his professional opinion, Eldridge is competent to stand trial, and was competent to waiver her *Miranda* rights.

After Eldridge's counsel indicated that he had no further witnesses, the Court gave Eldridge the opportunity to address the Court, which she declined to do, stating that her mother or her friend Tamika normally "help her talk to people" but were not present at the hearing.

The Government then called Dr. Clark. Dr. Clark is a psychologist licensed to practice in Michigan and is board-certified in forensic psychology. He is currently the President of the American Board of Forensic Psychology. Consistent with his written report, Dr. Clark testified that in his professional opinion, Eldridge: 1) is competent to stand trial in this action; and 2) was competent to waive her *Miranda* rights when she was questioned by the police on December 11, 2007.

Dr. Clark testified that he reviewed various materials in connection with his evaluation of Eldridge, including the videotape of her interview with the police on December 11, 2007, and audio recordings of several telephone conversations between Eldridge and Defendant Jones. He also testified as to his evaluation of Eldridge, and the various tests he performed on her. Dr. Clark testified that, in his professional opinion, Eldridge was malingering and deliberately falsifying reports of symptoms and problems that she did not actually have.

Dr. Clark testified that there were two categories of symptoms that Eldridge was feigning during his examination. First, he found that she was feigning cognitive problems, such as the inability to remember things and the inability to concentrate. Second, he found that she was

5

feigning symptoms regarding having extravagant hallucinations. He found that the visual and auditory hallucinations she claimed to experience do not represent authentic hallucinations of the sort that occur with genuine mental illnesses, such as schizophrenia.

Dr. Clark testified that he performed various tests, with built-in measures of validity, that strongly indicate that Eldridge was malingering in completing those tests.

He further testified that was a stark contrast between Eldridge's presentation during his evaluation, where she attempted to present herself as being totally "out of it" and unable to answer even the most obvious and easy questions, and Eldridge's telephone conversations with Defendant Jones. He noted that in those telephone conversations with Defendant Jones, Eldridge indicates a sharp awareness of her surroundings, a keen appreciation of the legal situation that she is in, and an active interest in her own best interests as they might appear in court. During those calls, she never mentions any hallucinations and there is no appearance or indication of any hallucinations, delusions or disordered thoughts. To the contrary, Eldridge speaks with her boyfriend in a way that appears very sensible, with no cognitive or memory problems.

Dr. Clark further testified that, after carefully reviewing the videotape of Eldridge's interview with the police, that at the time she was interviewed Eldridge was free of any kind of cognitive difficulties. She responded to the questions in a manner that indicated she was engaged in coherent linear thought. There was no indication of delusions, hallucinations, or cognitive problems and no indication that she was suffering from mental illness or any other form of mental defect.

Accordingly, Dr. Clark's professional opinion is that Eldridge is competent to stand trial and that she was competent to waive her *Miranda* rights when she was questioned by the police.

Following the hearing, the Court also listened to the compact disk containing tape recordings of conversations between Eldridge and Defendant Jones. (Exhibit 1).

ANALYSIS

A.  Competency to Stand Trial:

The first question before this Court is whether Eldridge is incompetent to stand trial. In order for Eldridge to be deemed incompetent to stand trial in this action, this Court[1] must determine that, by a preponderance of the evidence, Eldridge is presently suffering from a mental disease or defecting rendering her mentally incompetent to the extent that she is unable to understand the nature and consequences of the proceedings against her or to assist properly in her defense. 18 U.S.C. § 4241(d).

"The determination of whether a defendant is mentally competent to stand trial is a question left to the sound discretion of the district court, with the advice of psychiatrists [or other mental health professionals]. The medical opinion of experts as to the competency of a defendant to stand trial is not binding on the court, since the law imposes the duty and responsibility for making the ultimate decision of such a legal question on the court and not upon medical experts." FED. PROC. § 22:549, *Hearing and Determination as to Competency; United States v. Davis,* 365 F.2d 251, 256 (6th Cir. 1966).

After careful consideration of the expert reports submitted by Dr. Clark and Dr. Nixon, the testimony of Dr. Nixon and Dr. Clark given at the July 18, 2008 hearing, the testimony and

---

[1] It is "well settled that the question of competency of a defendant to stand trial under 18 U.S.C. §§ 4244-4246 is to be determined by the district judge alone and that a defendant is not entitled to a trial by jury to determine the issue." *United States v. Davis*, 365 F.2d 251, 256 (6th Cir. 1966).

behavior of Eldridge at the July 18, 2008 hearing and other prior hearings in this matter, and the tape recordings of Eldridge speaking with Defendant Jones, this Court concludes that the evidence overwhelmingly establishes that Eldridge is competent to stand trial in this matter.

The Court notes that both experts who testified on July 18, 2008, testified that in their professional opinion Eldridge is competent to stand trial. Although Dr. Nixon originally opined that Eldridge was incompetent, he later changed his opinion after listening to Eldridge's taped conversations with Defendant Jones. Thus, there has been no expert testimony presented to the Court indicating that Eldridge is not competent to stand trial. Moreover, the Court fully credits Dr. Clark's testimony, and agrees with his conclusion that Eldridge is malingering and feigning mental illness.

The conclusion that Eldridge is malingering and feigning mental illness is further supported by this Court's own observations of Eldridge at the July 18th hearing, and another hearing held by this Court on July 14, 2008.

Finally, the Court finds the recordings of Eldridge's telephone conversations with Jones, submitted by the Government as Exhibit 1, to be powerful evidence establishing that Eldridge is indeed able to understand the nature and consequences of the proceedings against her and is able to properly assist in her defense.

Accordingly, the Court finds, by a preponderance of the evidence, that Eldridge is NOT presenting suffering from a mental disease or defect rendering her mentally incompetent to the extent that she is unable to understand the nature and consequences of the proceedings against her or to assist properly in her defense. Thus, the Court finds that Eldridge is competent to stand trial in this action.

B.	Competency to Waive *Miranda* Rights:

The evidence presented by the parties at the competency hearing also enables this Court to determine whether Eldridge was mentally competent to waive her *Miranda* rights at the time she was questioned by police.

In *Miranda*, the Supreme Court set forth procedures through which police officers should apprise defendants of their rights. *Miranda v. Arizona*, 384 U.S. 436 (1966). "The *Miranda* warnings ensure that a suspect knows of his rights not to talk to the police, to have a lawyer present, and to discontinue talking at any time, as well as ensuring that the suspect is apprised that his statements can be used to secure his conviction." *Stanley v. Lazaroff*, 82 Fed.Appx. 407 (6th Cir. 2003)(citing *Miranda*). A defendant can waive these rights, but *Miranda* requires that the waiver be voluntary, knowing, and intelligent. *Id.* The test for waiver has two distinct dimensions:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.

*Id.*

Here, Eldridge's Motion to Suppress does not allege any coercion, and thus there appears to be no dispute that Eldridge's waiver was voluntary. Rather, Eldridge's motion alleges that her waiver was not made with an understanding of her rights because she is suffering from mental illness and she was therefore not competent to waive her *Miranda* rights.

Having considered Eldridge's Motion to Suppress and all of the above evidence, under the totality of the circumstances presented, the Court concludes that Eldridge's voluntary

9

decision to answer the officer's questions was made with the requisite comprehension of all the information required by *Miranda* (i.e., that she had the right to remain silent, to have an attorney present, and that her responses could be used against her at trial).

Accordingly, Eldridge's Motion to Suppress, based on her claim that she was incompetent to waive her *Miranda* rights, shall be denied.

## CONCLUSION & ORDER

For the reasons above, this Court ORDERS that Eldridge is competent to stand trial in this action.

IT IS FURTHER ORDERED that Eldridge's Motion to Suppress Evidence, brought on the ground that she was mentally incompetent to waive her *Miranda* rights at the time she was questioned by the police, is DENIED.

IT IS SO ORDERED.

                              S/Sean F. Cox
                              Sean F. Cox
                              United States District Judge

Dated: July 29, 2008

I hereby certify that a copy of the foregoing document was served upon counsel of record on July 29, 2008, by electronic and/or ordinary mail.

                              S/J. Hernandez
                              Case Manager